**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

STANLEY MARTIN HOMES, LLC; THOMAS C. SLICE, SR.; RUBY E. SLICE; and MICHAEL SCOTT SLICE,

*Plaintiffs*,

v.

TOWN OF CHAPIN, SOUTH CAROLINA; BILL MITCHELL, JR., in his official and individual capacities; and DAVID PATTON, in his official and individual capacities,

*Defendants*.

C/A No.: 3:26-cv-4929-MGL

**COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs Stanley Martin Homes, LLC (Stanley Martin) and Thomas C. Slice, Sr., Ruby E. Slice, and Michael Scott Slice (collectively, "the Slice Family"), by counsel, complaining of the Defendants, respectfully allege and show unto the Court as follows:

**BACKGROUND**

1. This action arises from the Town of Chapin's ("Town") refusal to issue sanitary sewer taps that Stanley Martin is contractually entitled to receive and the Town's refusal to issue sewer service "willingness to serve" letters needed for subdivision approvals. These refusals all result from Mayor Bill Mitchell's ("Mayor") unilateral and unlawful directive freezing *all* new sewer tap approvals and the Town's acquiescence in the illegal directive. The Mayor's actions established an illegal de facto moratorium on residential development in and around the Town. The freeze was imposed without notice, public hearing, or town council action as required by South Carolina law and the Town's own ordinances to enact a lawful moratorium.

2. The Town controls sanitary sewer service both within its corporate limits and throughout a service area in unincorporated Lexington County where Stanley Martin's Chapin Place Project and the Slice Family's property are located. Stanley Martin's predecessor built and conveyed off-site sewer infrastructure to the Town in exchange for 250 sewer tap credits in the initial phase and future phases of Chapin Place subdivision. The Town has acknowledged that 31 of those credited taps remain due to Stanley Martin. The freeze prevents Stanley Martin from obtaining those credited 31 sewer taps, andother taps, necessary to build out its subdivision. The freeze also prevents the Slice Family from developing their tract which requires 77 taps under their contract with Stanley Martin.

3. When Plaintiffs' counsel requested public records to determine the basis, scope, and legal authority for the sewer tap freeze, the Town and its officials refused to comply with the South Carolina Freedom of Information Act, demanding $4,000 to be paid in full before any records would be released and conditioning production on the requester's production of a driver's license. These unilateral and arbitrary conditions are not permitted under South Carolina law.

4. In this action, Plaintiffs bring claims for breach of contract, for a declaratory judgment that the Mayor's directive is unlawful and *ultra vires*, for damages under 42 U.S.C. § 1983 for the deprivation of Plaintiffs' property without due process and the taking of their property without just compensation, for violation of the South Carolina Freedom of Information Act, for civil conspiracy and for a writ of mandamus to compel the Town and its Director of Utilities to provide the required taps and issue willingness to serve letter to allow these developments to proceed.

## PARTIES

5. Plaintiff Stanley Martin Homes, LLC is a limited liability company engaged in residential development and homebuilding, doing business in Lexington County, South Carolina, with offices at 100 Executive Center Drive, Suite 200, Columbia, South Carolina 29210. Stanley Martin is the successor in interest to Essex Land Development, Inc. ("Essex") with respect to the sewer agreement described below.

6. Plaintiffs Thomas C. Slice, Sr., Ruby E. Slice, and Michael Scott Slice are citizens and residents of South Carolina who own, as joint tenants with rights of survivorship, a 10.56-acre tract constituting a portion of Lexington County TMS No. 001100-10-002; a 25.45-acre tract having TMS No. 001100-10-050; and a 1.17-acre tract having TMS No. 001100-10-049 (the "Slice Property").

7. Defendant Town of Chapin is a municipal corporation organized under the laws of South Carolina, operating under the mayor-council form of government, and located in Lexington County. The Town owns and operates the Chapin Regional Sewer System and the wastewater treatment plant serving the area.

8. Defendant Bill Mitchell, Jr., named in both his official and individual capacities, is the Mayor of the Town of Chapin. At all relevant times he acted under color of state law. He issued the directive at issue in this action.

9. Defendant David Patton, named in both his official and individual capacities, is the Town's Director of Utilities. At all relevant times he acted under color of state law and was responsible for the Town's utility and public-works operations, including the processing of sewer tap applications and the Town's response to public-records requests directed to him.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments, and under 28 U.S.C. § 1343(a)(3)-(4) because Plaintiffs seek to redress the deprivation, under color of state law, of rights secured by the Constitution.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state-law claims for breach of contract, violation of the South Carolina Freedom of Information Act, civil conspiracy, and for mandamus, in addition to supplemental jurisdiction over any state-law component of the declaratory judgment claim, because those claims are so related to the federal claims that they form part of the same case or controversy.

12. To the extent Plaintiffs seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, jurisdiction rests on the federal-question and civil-rights statutes cited above.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District and the property at issue is situated here, and because all Defendants reside in this District.

## FACTUAL ALLEGATIONS

### *The Sewer Agreement and Stanley Martin's Performance*

14. In 2016, the Town entered into a Sewer Agreement with Essex Land Development, Inc. governing sanitary sewer service for the Chapin Place development (the

"Sewer Agreement," attached as **Exhibit A**). Stanley Martin is Essex's successor in interest under the Sewer Agreement.

15. Under the Sewer Agreement, Essex as the developer designed, constructed, and conveyed to the Town both on-site and off-site sanitary sewer infrastructure, including a force main extending the Town's regional system, and did so at the developer's own expense and without direct monetary compensation from the Town.

16. In exchange, however, the Town expressly agreed to provide treatment capacity and to credit the Essex, through Regional Sewer Tap Certificates, up to a maximum of $973,000 for the off-site improvements and agreed that the credited tap certificates would be honored upon submission of plans for future phases.

17. Essex performed its obligations under the Sewer Agreement. The Town has acknowledged that, after application of prior credits to earlier phases, 31 tap certificates remain due to Essex's successor in interest, Stanley Martin, under the Sewer Agreement. On June 10, 2026, the Town's engineer confirmed the Town would provide a willingness to serve letter for the remaining 31 lots credited per the Sewer Agreement. And, as further explained below, Stanley Martin requires an additional 153 sewer taps, which the Town previously represented it was willing to issue. Following the Mayor's tap freeze, however, the Town has consistently responded to Stanley Martin's inquiries that no willingness to serve letters can be issued until the freeze is lifted.

***The Slice Property and Slice Farms***

18. The Slice Family owns the Slice Property, and since mid-2025 have been in negotiations to sell their property to Stanley Martin. The Slice Family entered into a contract to sell the Slice Property in 2025. Stanley Martin contracted to acquire the Slice

Property for purposes of developing it as part of the single-family community referred to as Slice Farms, encompassing Lexington County Parcels 001100-10-002, 001100-10-049, and 001100-10-050.

19. Stanley Martin filed necessary applications with Lexington County to commence development of Slice Farms. On June 24, 2026, Lexington County notified Stanley Martin that it had completed concurrency review and approved the Slice Farms subdivision for further submittal, review, and permitting.

20. Stanley Martin accordingly has secured all other governmental approvals and permits (or are otherwise issuable) to move forward with purchasing the Slice Farms land and constructing the Slice Farms project except for the sewer taps commitment.

21. Development of the Slice Property depends on sanitary sewer service from the Town, which is the designated sewer provider for the area. Stanley Martin repeatedly requested a willingness to serve letter for the Slice Farms project, but those requests were rejected due to the tap freeze.

***The Mayor's Unlawful Directive Freezing Sewer Taps***

22. Upon information and belief, on or about November 10, 2025, shortly after taking office, Mayor Mitchell issued an administrative statement that the Town would place a hold on issuing any new sewer taps until he and the utility director (Defendant Patton) could meet and conduct an assessment of the system.

23. The freeze has remained in effect continuously since November 2025. Upon information and belief, all new proposals and approvals for development have been placed on hold due to the sewer tap freeze.

24. The Mayor has publicly stated that the freeze will remain in place for *six to ten years*, until the Town's wastewater treatment plant can be expanded at an estimated cost of at least $42 million. He has stated that developments of more than nine homes will not receive permits during that period.

25. On May 4, 2026, the Town confirmed that the Mayor is only allowing sale of sewer taps for sewer service connection that requires less than 10 Residential Equivalent Units.

***The Town's Refusal to Provide Contractually Owed Taps and Service***

26. The Town is committed to provide 31 sewer taps, which is the balance of sewer taps remaining under the Town's contractual commitment to furnish sewer taps in consideration for Stanley Martin's substantial investment in sewer infrastructure. Stanley Martin's Chapin Place North project is engineered for 184 lots. Stanley Martin requires an additional 153 sewer taps. With the freeze in place, the Town will not provide willingness to serve letters required to obtain a permit to construct the necessary infrastructure to support the development. The Town has therefore frustrated the purpose of Stanley Martin's substantial investment in infrastructure, which is a breach of contract.

27. The Town has likewise refused to issue any willingness to serve letters for the Slice Farms development. The Town has a duty to do so, and issuance of these letters is a ministerial act. Lexington County Ordinances govern municipal operations of wastewater systems. Section 66-266 of the County Code provides: "A public entity may construct and extend its water system and/or sewer system only within its designated municipal water and sewer service area and shall service the customers located within such area."

28. The Town's arbitrary refusal to issue such willingness to serve letters jeopardizes Stanley Martin's ability to close its purchase of the Slice Property and places its due-diligence and development expenditures at risk.

29. As a pretext for this moratorium, the Town has stated its sewer capacity is not sufficient to support any further residential development. However, in July 2022, the Town Engineer, Rey Angoluan, confirmed to Stanley Martin that the existing Chapin Place pump station capacity is sufficient for its contemplated developments totaling 545 lots, which included the developments known as Chapin Place North and South.

***The Freeze Is an Unlawful De Facto Moratorium***

30. The Mayor's directive operates as a moratorium on residential development in the areas served by the Town's sewer system, inside and outside the Town's corporate limits.

31. Under South Carolina law, a municipality may not impose a moratorium on construction projects without published notice and at least two readings a week apart; more generally, municipalities must act through their council by ordinance adopted after notice and a public hearing. S.C. Code Ann. § 6-29-760.

32. This "freeze" was not adopted by ordinance, was not preceded by published notice or two readings, and was never enacted by the Town Council. It was imposed by the unilateral executive action of the Mayor.

33. Under the mayor-council form of government, the Mayor is the chief administrative officer, whose statutory powers are executive and administrative; the Mayor has no authority to enact a regulatory freeze or moratorium by fiat. *See* S.C. Code Ann. § 5-9-30.

34. The Town's own ordinances reserve to the Town Council the authority to establish charges for services and to set utility and tap fees. Ordinances 2.111 and 2.125. The Mayor's unilateral directive therefore exceeds his authority and is *ultra vires* and void.

### *The Freeze Is Pretextual*

35. The Mayor has asserted that the freeze is justified by limited wastewater treatment capacity and by a purported capacity study. On information and belief, no such study was undertaken or made available; Plaintiffs' public-records request seeking the study and related capacity data went unanswered on the merits.

36. The executive director of the Central Midlands Council of Governments stated publicly that the Town's treatment plant is operating at roughly *43 percent* of capacity and that expanding it might not be necessary at this time.

37. The Mayor campaigned on restricting growth in and around Chapin and has described using the Town's sewer system as leverage to do so. Since taking office he has eliminated the position of town administrator and consolidated authority over key personnel. The stated capacity rationale is a pretext for advancing a personal anti-growth political agenda by halting residential development across-the-board.

### *Plaintiff's Demand and the Town's Response*

38. By letter dated June 11, 2026, Plaintiffs' counsel demanded that the Town approve the taps for the remaining Chapin Place lots, provide a willingness-to-serve letter for Slice Farms, and comply with its legal obligations. In doing so, counsel explained that the freeze was an unlawful de facto moratorium and that the Mayor's *ultra vires* acts exposed him to personal liability. The letter was copied to the members of the Town Council and to the Director of Utilities, Mr. Patton.

39. The Mayor responded dismissively, disputed that the freeze was a moratorium, declined to respond substantively, and instructed counsel not to communicate with other Town Council members.

***The Town's Refusal to Comply with the Freedom of Information Act***

40. On June 19, 2026, Plaintiffs' counsel submitted a request under the South Carolina Freedom of Information Act, S.C. Code Ann. § 30-4-10 et seq. (the "FOIA Request," attached as **Exhibit B**), for records concerning the sewer tap freeze directive, the authority for the freeze, the purported capacity study, tap applications and approvals, and related communications. The request was directed to the Town, to Mayor Mitchell, and to Director of Utilities David Patton, each of whom received it by certified mail on June 25, 2026.

41. The Town, through its clerk, responded that it possessed responsive records but demanded $4,000 paid in full before any records would be released and required a copy of the requester's driver's license as a condition of production. (Emails purporting to respond to the FOIA Request are attached as **Exhibit C**).

42. By letter dated July 2, 2026, Plaintiffs' counsel explained that these conditions violate FOIA, which caps any pre-production deposit at 25 percent of the reasonably anticipated reproduction cost, requires an itemized fee estimate, imposes no charge for records transmitted electronically, and authorizes no driver's license condition.

43. On July 9, 2026, the Mayor reiterated the demand for a driver's license, disputed that the Town was in noncompliance, and refused to provide an itemized estimate. The Town has neither withdrawn its unlawful demands nor produced the requested records.

44. FOIA required the Town to respond to the request with its determination within ten business days and, if granted, to produce records within the statutory period, and it permits only reasonable, actual-cost fees. *See* S.C. Code Ann. § 30-4-30(B)-(C). The Town's conditions and refusal to produce records violate these requirements.

**COUNT I — Breach of Contract**

***(Stanley Martin against the Town of Chapin)***

45. Plaintiffs incorporate the preceding paragraphs.

46. The Sewer Agreement is a valid and binding contract between the Town and Stanley Martin's predecessor, to which Stanley Martin succeeded, and which by its terms binds the parties' successors.

47. Stanley Martin's predecessor, Essex, fully performed by designing, constructing, and conveying the on-site and off-site sewer infrastructure to the Town.

48. Regarding the Chapin Place project, the Town breached the Sewer Agreement by refusing to issue and honor the Regional Sewer Tap Certificates credited under the agreement, including the 31 taps the Town concedes remain due, and by refusing to provide treatment capacity and service commitments as promised.

49. Every contract in South Carolina also contains an implied covenant of good faith and fair dealing governing the manner in which a party performs and exercises discretion, which the Town breached by withholding the bargained-for taps.

50. The Town's refusal to provide the sewer taps is a material breach that defeats the essential purpose of the Sewer Agreement, because obtaining the sewer tap certificates was the entire return that Stanley Martin's predecessor bargained for in exchange for building and conveying the infrastructure.

51. As a direct and proximate result, Stanley Martin has suffered damages and is entitled to its actual and consequential damages, specific performance of the Town's obligation to convey the taps, and attorneys' fees and costs as provided in the Sewer Agreement.

**COUNT II — Declaratory Judgment**

***(Against all Defendants)***

52. Plaintiffs incorporate the preceding paragraphs.

53. An actual, justiciable controversy exists between Plaintiffs and Defendants concerning the lawfulness of the Mayor's directive and Plaintiffs' entitlement to sewer taps and service.

54. Under South Carolina law, a moratorium on construction may not be imposed except by ordinance adopted after published notice and at least two readings, and municipal regulatory power is exercised by the council, not by unilateral action of a mayor. S.C. Code Ann. § 6-29-760.

55. A governmental act taken without the statutorily required predicate, or beyond the actor's conferred authority, is *ultra vires* and void.

56. Plaintiffs are entitled, under 28 U.S.C. §§ 2201–2202 to a declaration that: (a) the Mayor's directive freezing sewer tap approvals is an unlawful de facto moratorium; (b) the directive is *ultra vires* and void because it was imposed without the required notice, hearing, readings, and council action and exceeds the Mayor's authority; and (c) Plaintiffs are entitled to the issuance of the sewer taps and willingness-to-serve confirmations to which they are entitled by contract and law.

**COUNT III — 42 U.S.C. § 1983: Deprivation of Property Without Due Process and Taking Without Just Compensation**
***(Against all Defendants)***

57. Plaintiffs incorporate the preceding paragraphs.

58. Plaintiffs bring this count under 42 U.S.C. § 1983 for deprivations, under color of state law, of rights secured by the Fifth and Fourteenth Amendments to the United States Constitution.

59. *Deprivation of protected property interests***.** Stanley Martin holds a constitutionally protected property interest in the sewer taps that the Sewer Agreement obligates the Town to convey, because the contract and the Town's ordinances leave the Town no discretion to withhold the credited taps once the developer performed. Under controlling Fourth Circuit caselaw, a developer holds a protected property interest in an approval where state or local law removes official discretion to deny it.

60. *Deprivation of procedural due process.* Defendants deprived Plaintiffs of that interest without notice and an opportunity to be heard, by imposing and maintaining an indefinite freeze in derogation of the Town's own ordinances and the procedures state law requires.

61. *Deprivation of substantive due process.* The freeze was arbitrary, capricious, and pretextual, targeting residential development to halt growth rather than serving any bona fide need. The freeze was imposed through an extraordinary and procedurally irregular intrusion into what should have been the ministerial issuance of contractually owed taps.

62. *Uncompensated taking.* The freeze, announced to last six to ten years, operates as a de facto moratorium that bars the construction of more than 250 homes and denies Plaintiffs economically viable use of their properties, effecting a regulatory and

temporary taking for which just compensation is due. The freeze prohibits development and interferes with Plaintiffs' distinct investment-backed expectations and the ability of the Slice's to use their land as they see fit.

63. *Ripeness.* This takings claim is ripe and may be brought in this Court under § 1983 without any state prerequisite.

64. *Municipal liability.* The freeze was directed by Mayor Mitchell, who purported to exercise final policymaking authority over the Town's sewer tap decisions; his single decision to impose the freeze constitutes official municipal policy for which the Town is liable.

65. *Individual liability.* Mayor Mitchell and Mr. Patton implemented and enforced the freeze and are liable in their individual capacities for the deprivations they caused under color of law.

66. *Damages.* As a direct and proximate result, Plaintiffs have suffered damages, including lost profits from the developments, carrying and due-diligence costs, and the loss of the use and value of their property, in amounts to be proven at trial, and are entitled to compensatory damages, just compensation, and attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT IV — Violation of the South Carolina Freedom of Information Act**
***(Against all Defendants)***

67. Plaintiffs incorporate the preceding paragraphs.

68. The Town is a public body subject to the South Carolina Freedom of Information Act, S.C. Code Ann. § 30-4-10 et seq. *See* S.C. Code Ann. § 30-4-20(a).

69. Plaintiffs made a proper written FOIA request for public records. The Town was required to respond with its determination within ten business days, to produce

nonexempt records within the statutory period, and to charge only reasonable, actual-cost fees, with any pre-production deposit capped at 25 percent of the anticipated reproduction cost. S.C. Code Ann. § 30-4-30(B)-(C).

70. Defendants violated FOIA by demanding payment of the entire estimated $4,000 cost before releasing any records, by refusing to provide an itemized cost estimate, by imposing a driver's license condition found nowhere in the statute, and by failing to produce the requested nonexempt records.

71. Plaintiffs are entitled to declaratory and injunctive relief compelling disclosure, and, as a prevailing party, to an award of reasonable attorneys' fees and costs, and to a civil penalty because the Town's refusal to produce records and its unreasonable delay were arbitrary and capricious. S.C. Code Ann. § 30-4-100; S.C. Code Ann. § 30-4-110(F).

**COUNT V — Civil Conspiracy**

***(Against Mayor Mitchell and David Patton, in their individual capacities)***

72. Plaintiffs incorporate the preceding paragraphs.

73. The individual Defendants combined and agreed with one another to impose and maintain the unlawful sewer-tap freeze, to withhold the taps and service to which Plaintiffs are entitled, and to obstruct Plaintiffs' access to public records concerning the freeze, and they committed overt acts in furtherance of that agreement, causing damage to Plaintiffs. *See Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774 (2021).

74. The individual Defendants acted for their own purposes, including advancing the Mayor's personal political objective of halting growth, rather than solely within the ordinary scope of their public duties, and thus are subject to individual liability for the conspiracy.

75. Moreover, because they acted for their own purposes, the individual Defendants are not shielded by the intracorporate-conspiracy doctrine or by the immunity the South Carolina Tort Claims Act affords employees acting within the scope of official duty.

76. As a direct and proximate result, Plaintiffs have suffered damages in amounts to be proven at trial. Because the individual Defendants acted willfully, wantonly, outside the scope of their official duties, and with intent to harm Plaintiffs, Plaintiffs are also entitled to punitive damages; the South Carolina Tort Claims Act's bar on punitive damages does not protect individuals sued for conduct outside the scope of their official duties. Plaintiffs are further entitled to recover, as damages caused by the conspiracy, the costs and attorneys' fees they incurred as a consequence of the individual Defendants' conspiratorial conduct separate from and not overlapping with the damages sought under Plaintiffs' other claims, and apart from any fees incurred in prosecuting this action.

## COUNT VI — Writ of Mandamus

***(Against David Patton and the Town of Chapin)***

77. Plaintiffs incorporate the preceding paragraphs and plead this claim in the alternative to their other claims for relief.

78. This claim arises under South Carolina law and is before the Court under supplemental jurisdiction.

79. Under South Carolina law, a writ of mandamus issues to compel a public official to perform a ministerial duty where the petitioner shows (1) a duty of the respondent to perform the act, (2) the ministerial nature of the act, (3) a specific legal right for which discharge of the duty is necessary, and (4) the absence of any other adequate legal remedy.

80. A duty is ministerial when it is absolute, certain, and imperative, defined by law with such precision as to leave nothing to the exercise of discretion.

81. Defendant Patton, as the Town's Director of Utilities, has a ministerial duty to issue the willingness-to-serve letters and to approve and issue the sewer taps to which Stanley Martin is entitled under the Sewer Agreement including, at a minimum, the 31 tap certificates the Town concedes remain due because the Agreement fixes that entitlement and leaves no discretion to withhold it.

82. South Carolina courts have held that a landowner or developer states a claim for mandamus to compel a town to furnish water and sewer service where a contract establishes a clear, non-discretionary duty and no other adequate remedy exists.

83. Plaintiffs have a specific legal right to the issuance of those approvals, and the Mayor's freeze, which was imposed without lawful authority, is not a valid basis for the Town or its Director of Utilities to refuse to perform.

84. To the extent any aspect of the requested relief is committed to the official's discretion, which is denied, a writ of mandamus should issue to compel Defendant Patton to exercise that discretion and act upon Plaintiffs' applications.

85. Plaintiffs are entitled to a writ of mandamus directing Defendant Patton and the Town to issue the willingness-to-serve letters and to approve and issue the sewer taps necessary for the Chapin Place and Slice Farms projects to proceed, enforceable through the Court's contempt power.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter judgment in favor of Stanley Martin on Count I and award damages for breach of contract, together with specific performance of the Town's obligation to

convey the sewer taps, together with its attorney's fees and costs as provided in the Sewer Agreement;

b. On Count II, issue a declaratory judgment that the Mayor's sewer-tap directive is an unlawful de facto moratorium, that his directive is ultra vires and void, and that Plaintiffs are entitled to the sewer taps and willingness to serve confirmations;

c. On Count III, award compensatory damages and just compensation against the Town and the individual Defendants, together with attorney's fees and costs under 42 U.S.C. § 1988;

d. On Count IV, grant Plaintiffs declaratory and injunctive relief compelling the Town to comply with the South Carolina Freedom of Information Act and produce the requested records, together with an award of reasonable attorney's fees and costs under S.C. Code Ann. § 30-4-100, and impose the civil penalty authorized by S.C. Code Ann. § 30-4-110(F);

e. On Count V, award actual and punitive damages against the individual Defendants for civil conspiracy, including the costs and attorney's fees Plaintiffs incurred as a consequence of the conspiracy;

f. On Count VI, issue a writ of mandamus directing Defendant Patton and the Town to issue the willingness to serve letters and to approve and issue the sewer taps necessary for the Chapin Place and Slice Farms projects to proceed;

g. Award pre- and post-judgment interest, costs and attorney's fees as permitted by law; and

h. Grant such other and further relief in favor of Plaintiffs as the Court deems just and proper.

Respectfully submitted,

*s/Carter Massingill*
Ronald G. Tate, Jr. (Fed ID 4021)
Carter Massingill (Fed ID 12131)
Gallivan, White & Boyd, P.A.
PO Box 10589
Greenville, SC 20603
rtate@gwblawfirm.com
cmassingill@gwblawfirm.com
Phone: (864) 271-9580

Dylan R. Glick (Fed ID 13618)
Gallivan, White & Boyd, P.A.
PO Box 7368
Columbia, SC 29202-7368
dglick@gwblawfirm.com
Phone: (803) 779-1833
*Attorneys for Plaintiffs*

October 16, 2026